2016, 2686, and 2728. Mr. Bradford. May it please the court and good morning. And yes, your honor, you did pronounce my client's name correctly. It's Mr. Yin and Shenzhen El lighting. Properly construed the 279 patent is a novel currency cable entitled to patent protection in full view of the Ha and Karodi references. Mr. Yin and Shenzhen El lighting asked that this court restore the patent protection that it had for that currency cable. One that it was issued in full view of Ha in 2010. Mr. Yin cited that patent at the time his application was filed in the U.S. as well as in China. For two important reasons. Number one, the board in this case adopted an unreasonably broad construction. Turning to non-record evidence, extrinsic evidence, rather than turning to what and how the inventor described the invention in view of the specification as this court, Judge Lori, noted in Henry Smith International just about a month ago. Number two, the combination of Ha and Karodi failed to disclose two important structural and electrical limitations of the 279 patent such that there was an absence of substantial evidence to support a finding of obviousness. The product that's at issue in this case involves cables. It is an El lighting. El or electroluminescence is the process by exciting phosphor using an electromagnetic field. In this particular case, Mr. Yin described a cable in which you would intertwist helically El filaments or El cords in a helix. The important limitations of this patent. Even if we disagree with the board's claim construction, could we conclude that that error was harmless because it still would have been obvious to modify, is it He? It's pronounced Ha in China. I've said He for a long time, but Ha is correct. To emit the dye light rather than just to emit light? No, Your Honor. Initially, I am focused on the claim construction, but moving to the issue of obviousness, even in view, we proposed a construction that is based upon the specification, the description of the invention, and each of the eight embodiments, which as you have noted, emits and dyes light of each El cord in succession, one after the other. The reason why that particular limitation, if you accept that limitation, the 279 patent is not obvious, is because the board still failed to find two limitations of the 279 patent that don't exist in the prior. It's important to understand the first one. It's a structural sequence. This gets overlooked by the board. In the patent, Mr. Yen describes in both Claim 1 and Claim 7 and throughout the patent that you take a plurality of El cords and you array them abreast, shoulder to shoulder, and then you intertwist them helically in sequence. That structural sequence is important within the helix. A structured helix is not suggested by Ha. It is not required by Ha. Ha does teach that each electroluminescent filament can be controlled, right? It does. It specifically states, in describing its embodiment, that once the power is inputted, the AC power is input, each of the filaments are activated. It describes that specifically, that each of the El filaments, plural, are active. There's two to eight filaments. They then emit light in sequence. What they do is it controls the saturation, it controls the color, it controls the luminance of each filament to make a colorful, bright, beautiful, as it describes, cable. The difference between what Ha is describing, and Ha does not have any language within it that states that its driver, whatever is controlling the AC power, is able to turn the power off relative to any particular filament. That's not where the analysis should end because the board found, well, maybe a person of ordinary skill in the art could figure out a way to turn a filament off. Now, you want us to interpret the language in the claim that reads, emits light, to mean emits and dies. Yes. Now, I find that example one mentions emits and dies several times. In the description of the invention, it's there also. Yes. In all the subsequent embodiments, it simply says emits, as does the claim. How can we add language from the specification into the claim? Thank you, Your Honor. I appreciate you pointing that point out. If you look at the abstract and you look at the description of the invention, Mr. Yen ties the structural and electrical limitations of intertwisting these helically such that you've got this helix that is ordered. That's important because HUD does not have an ordered helix. You put the driver on there and you fire the first and kill it. You fire the second and you kill it. You fire the third and then kill it. Because of the nature of this helix, on your side of the bench, you can see this side. You can't see the back. These EL filaments wrap around the helix such that you can only see a portion here. What Mr. Yen described in the abstract, he said, because you can only see that side, you will only see a segment by segment by segment of the light moving across the cable. Turning then to the remaining embodiments, you are correct. Embodiment 1, 2, and 5 claim that specific driver, whereas claims or embodiments, I believe it's 2, 4, 6, 7, and 8, talk about segment by segment lighting. It describes the specific lighting effect that Mr. Yen describes as created by the structural element of having an intertwisted helix with an order of where the filaments are within that helix. The specification discloses emits and dies in some embodiments but not others. But then when they wrote the claims, they just wrote emits. So why aren't the embodiments relating to emits and dies dedicated to the public? The embodiments... Subject matter. Your Honor, each of the embodiments, 1 through 8, claim the same... First of all, there is no evidence that the other embodiments claim a different electrical sequencing. In fact, what Mr. Yen stated is, I want to have the same electrical sequence as reflected by the structural elements of the helix. Going to the claims themselves, both claims 1 and 7 require the structural elements in terms of arraying abreast and intertwisting helically in sequence and the driver emitting light within that sequence. It's also called a currency and cable. Specifically as it relates to this Court's decision in Henry Smith International, it would be error to adopt a construction that is contrary to the embodiments as well as the description of the invention, which carries more weight than the embodiments. The description of the invention and the abstract both clearly state emits and dies. There is no evidence in the other embodiments that Mr. Yen intended to deviate from that. In fact, it's the contrary. There's nothing in this patent that says that he ever wanted anything other than emits and dies one after the other. It wouldn't create the effect. Your position is that emits light in sequence and emits and dies in sequence are used interchangeably throughout the specification? Yes. Because in every instance, he either talks about emits and dies or segment by segment light moving down, which is the effect of emits and dies within the structured helix, which is also claimed. But again, I'm still having a hard time with the concept of even if we agreed with that, whether there is still sufficient evidence for the obviousness determination. And I want to go back to your statement that you said that he doesn't disclose helically wound wires. Yes. And what is your support for that? The HAW reference itself specifically talks about helically wringing the filaments around a central axis. There is nothing in the HAW reference that specifically requires arraying those filaments abreast and then sequencing them in that same sequence throughout. And the reason they don't is because HAW, as you pointed out, Judge, has controllable, programmable elements that are tied to each color. In HAW, there is no real need to control where the filaments sit within the helix because they know where it is by virtue of its color. Versus, and this is important to HAW, at any one point, if you are trying to fire sequence one, you know where that filament is within the helix. And that was important in order to create the effect. You say that the EL filaments, that they are different colors, they are insulated from each other, but they are helically wound on the outer side of the central axis. Why isn't that enough? There is nothing, Your Honor, thank you. The part of arraying them abreast and intertwisting them helically is something that was specifically important to Mr. Yen. It is not claimed. In order to get there, the board accepted that a person of ordinary skill in the art would find that limitation, add that limitation of arraying them abreast. What is your response to the helically wound on the outer side of the central axis language in HAW? This is my response. I absolutely agree that what HAW states is that the filaments are helically wound around the central axis. What HAW doesn't require is any particular order to those filaments. He just says take two to eight different colored filaments and wrap them around a helix. And then put controllable elements on the end and control the color regardless of where they sit within the helix. Whereas Mr. Yen specifically required in order to produce his effect, you have to put them in a particular order. You have to array them abreast and maintain that order throughout the helix in order to then emit and dye light from one end to the next to produce the effect. And HAW does not teach that. HAW does also not teach emitting and dyeing light. This is the second part of the non-obviousness question. The board noted that in order to find the emits and dyes element, they were simply going to rely upon the person of ordinary skill in the art ability to essentially test and coming and arriving to the 279 patent. The board specifically stated that we don't find any evidence that HAW discloses emits and dyes, but we think the person of ordinary skill in the art would arrive at that particular sequence as it associates with that particular structural helix. And that's an error. This court in Arendi versus Apple made it clear that we're not going to supply missing elements in the prior art by reliance upon a person of ordinary skill in the art to come to those elements. And that's exactly what the board did in this instance. It identified that HAW does not, because it doesn't. HAW specifically states that when the AC power is applied to the filaments, they are charged. There's no reference in HAW about turning them off in a particular sequence that would leverage both darkness and light in order to produce an effect. And that's exactly what Yen is attempting to do. He's using as much darkness, the dead filaments, as he is the lit filaments to produce the effect. And HAW does not talk about that. And so leveraging what this court said in Henry Smith International, we can't overread what HAW states just as much as we can't overread what Yen states. That's exactly what the board did here, simply because both parties used the word sequence. You can't overread Smith either. No, I won't overread Smith either. Well, I can't. That's your job. Your Honor, I've got a couple of minutes left. I would note that the board's construction. You have a couple of minutes, including rebuttal. Yes, I understand that. Your Honor, the construction that the board adopted in this case was based upon non-record evidence. It turned to a dictionary definition for Merriam-Webster that wasn't offered by either side, wasn't proposed by the board, and it didn't appear in the record until after the close of trial. That is a violation of my client's due process rights. The actual construction that they adopted requires continuous light emission or light emission in a connected series. Words that don't appear in the patent and, frankly, are flatly contrary to the specification and would read out many of the embodiments, even if we don't adopt all of the embodiments, except as I say they accept. For the last part, in terms of the cross-appeal, my client doesn't take a particular position. The position is that ground one was deferred by the board in its final written opinion. Any written opinion as to ground one at this point would be time-barred. We don't take any other position. Thank you, Your Honor. Thank you, Mr. Bradford. Mr. Walling. Thank you, Your Honors. Good morning. May it please the Court. There are two principal issues that I would like to address today. The first is claim construction and the second is the cross-appeal. And if I may, I'd like to start with the issue of claim construction. The board's construction is consistent with the patent specification. If you look at column one of the patent, go down to lines 63 through 67, the patentee plainly states that emitting light of the present invention can be in a variety of forms. The patentee then says... What if we disagreed with you on claim construction? Does that, then you lose on obviousness? Your Honor, if you disagree with us on claim construction, there are sufficient findings within the record such that this Court could still find that the challenge claims are unpatentable. And here's why. The board made a finding that Hay discloses, turning the electroluminescent filaments on or off. You can see that at pages 15 and 16 of the board's final written decision, where at the bottom of page 15, the board notes patent owners, Profford Declarant, Dr. Robert T. Weberka testifies that even blending to achieve a color such as purple would require turning the electroluminescent filaments on or off to achieve colors. Then at the top of page 16, that first full paragraph, the board states accordingly, we find that Hay teaches or at least suggests the programmable electronic elements, the driver, control each electroluminescent filament respectively by controlling color, saturation, and luminance. So each electroluminescent filament may emit or not emit light according to a predetermined program. So the functionality is within Hay to emit and dye light in sequence according to even patent owners' Profford construction. What about your friend's argument that Hay doesn't really disclose the helical elements aspect of that? In other words, while there is a helix element to it, it doesn't operate in the same way. Your Honor, I think that you went exactly to the right spot in pointing to the disclosure within Hay that talks about helically twisting the electroluminescent wires around a central core. That's illustrated very vividly in figure two of the Hay patent, where you see a central core with the electroluminescent filaments twisted around it, exactly as the EL cords are twisted around a central axis within the 279 patent. And the board construed helically intertwisted in its decision on institution to just say that that means twisted together. Hay teaches or suggests electroluminescent filaments that are twisted together. That was a board finding that needs to be reviewed for substantial evidence. And while an initial take on this evidence may come out to a different conclusion, that's not the standard that we're on today. The standard we're on is whether there's substantial evidence in the record to support that finding, and there is. Now, when one pairs that with Hay's additional disclosure that you can control the color and brightness of this electroluminescent cable by emitting light in sequence, that indicates that there is a sequence in the way that those electroluminescent filaments are wrapped around the cord. It's not just light any one at a time. You know... So let's go back to the clamp construction. But isn't the whole point of this patent that it is designed to create the light walking along the cord? So in other words, you've got to have the on and off occurring? The purpose of this patent is stated in the patent itself when it describes the purpose of the invention. The purpose is to provide a current scene cable that can show the live state. One way in which the patentee said that you could show the current being seen is to show flow. But current scene is not current flow. There are other ways to indicate that current is in the cable such that it should be seen, and that is what the patentee is talking about at the bottom of column one in saying that you can achieve this lighting, you can achieve the purpose of our invention in a variety of forms. One way that we particularly show it is with a lighting dynamic phenomenon in which a lighting session goes after another section. The patentee reiterates that point at column seven of the invention when he states, it is understood by those skilled in the art that the above embodiments are used only for elucidating the principles of the invention. Every patent says that. But you are asking us to construe this patent in a way that completely reads out the preferred embodiment, right? Not so, Your Honor. This construction still allows the preferred embodiment to exist because even if the preferred embodiment being emitting light from cord one then dying, emitting light from cord two then dying, emitting light from cord three then dying, even in that circumstance, the cords have emitted, given off or thrown out light in a continuous or connected series. That has happened. An additional thing has also occurred. Those cords have then ceased to emit light. But that is still within the ambit of the board's claim construction as are other iterations, other embodiments, some of which are disclosed, some of which are  not. For example, you could have the cords lighting up one, two, three, then turning off one, two, three. Again, they're giving off or throwing off light in a continuous or connected series. They would also be moving in a direction of current flow consistent with one of the objectives within the 279 patent. You could have other embodiments where the preferred embodiments talk about a three cord example, but you could have nine cord examples because what is claimed is a plurality of electroluminescent cords. In that case, you could have cords one through three turning on then off, cords four through six turning on then off, cords seven through nine turning on and then off. In that case, you would be showing current flow again, but that would actually be outside the scope of the patent owner's proffered construction. If all three are lighting up, you can't tell which way the current's flowing, right? You can. And then you got the whole point? You can because one through three turn on, but then cords four through six turn on. There are actually nine cords. That is an embodiment that would be within the scope of the claims because the claims just ask for or require a plurality of electroluminescent cords. It doesn't say how many there have to be, just two or more. So the point is that the patentee wanted to allow sufficient room for others of skill in the art to come up with additional embodiments other than the preferred embodiments, which is three cords. So you're saying when their expert said that you have to have this temporal spatial effect that he was wrong? The expert did not cite to any specific portion of the patent to come to that conclusion. We argued that that was a conclusory affidavit, but it's important to note that adding the temporal effect would be yet another limitation that would need to be imported into these claims because as it stands right now, the claims say emit in sequence. They don't say that it has to be one after the other. They don't say it has to be on or off. They also don't say how quickly they have to emit in sequence, how quickly they have to go on and off in order to create a kind of current flow effect. Again, that only comes from a single preferred embodiment. That comes from embodiment number one, where the patentee is stating you would turn these on, one on, one off, two on, two off, three on, three off, and the whole series would take between .2 and .9 seconds, and then you would do it over again, but that's not within the scope of the claims. That's not what the claims talk about because current flow is not a limitation. The patent owner repeatedly suggests that current flow is a limitation, but it's not. The patent owner argued an oral argument that the current flow requirement comes from current scene, which is in the preamble, and which is a claim term that was not construed at all because a construction was not requested, and we can't package it in to the emits and sequence limitation now because that wasn't requested as part of the construction either. So current flow may be something that some embodiments do. It's not what the claim needs to do according to the plain language of the claims, Your Honor. One point I did want to address related to the consistency of the embodiments themselves. The patent owner argues that all eight embodiments require the same sort of lighting phenomena, and they don't. The most expressed disclosure of this lighting phenomena is in Embodiment 1. That is clearly referred back to in Embodiments 2 and 5, but the other embodiments either refer to lighting bisections or don't refer to any lighting construct at all. Did the board make any of these findings? All the board did was rely on a dictionary definition that it had never cited before, and no party had ever cited to it. Actually, Your Honor, when the board reached its construction for this claim term, it initially went through all of the arguments the patent owner has raised here, combed through the intrinsic record, looked at the arguments about the embodiments being the same, and rejected those arguments. It relied exclusively on the intrinsic record to determine that the plain and ordinary meaning should apply, not the specialized meaning that the patent owner was asking for. All it did was outline what the arguments were, and then they said, no, we reject those because we've got this dictionary definition. Actually, the... There was no discussion of those arguments. It just said, here's what the arguments are. The board indicated that this is what the arguments are, what was countered. It said that we declined to adopt the patent owner's proposed claim construction. It agreed that there was not disclaimer, that those embodiments were not the same, and stated that it needed to maybe step back, Your Honor. It disagreed with the assertion that the specification supports the proposed interpretation. That is at page nine. Then addressed the disclaimer argument at page 10, saying that we agree with Petitioner that the statements and the response to the office of action do not disclaim subject matter. Then the board concluded that in light of its analysis of these arguments, the claim term should be interpreted given their ordinary and customary meaning, as understood by one of ordinary skill in the art of the time of invention, in light of the specification. That's at page 11 of the final written decision. In other words, this is the problem is that what the board did is once again say that the only way that you get away from a general dictionary definition is if you have an actual clear disavowal, or you have the patentee acting as a lexicographer. We have said repeatedly that that's not the way it's supposed to work. You're supposed to do claim construction according to all the various steps and analyses. Forget about, I mean, yes, you can do the overlay of BRI, but you still have to go through the analysis that's laid out in Phillips, right? The court did that. The court reviewed the specification, reviewed the arguments from the patent owner in terms of whether there was definition or disclaimer, determined that there was not clear and unequivocal definition or disclaimer that should lead the board away from the plain and ordinary meaning of those terms. Having decided that plain and ordinary meaning should apply, the board then consulted a dictionary definition. Very quickly, because I see that my time is running out, there is not a due process concern here. This issue was front and center during the entire proceeding. It was raised in the patent owner's argument and in reply. The board questioned the parties thoroughly on this specific instruction. There was no effort to ask for a surreply following the briefing on this issue. There was no petition for a rehearing once the board actually issued its construction. So the patent owner had a full notice and opportunity to be heard on this issue. What a patent owner really is doing is just disagreeing with what the construction actually is. And the fact that a dictionary was used in the course of arriving at this construction is not something for this court to be concerned about either. In the SAS case, this court considered an issue of claim construction, one of which raised the very concerns that the patent owner has here. Under the Administrative Procedures Act, was the patent owner given notice and an opportunity to be heard? This court determined that the patent owner had not been given such an opportunity because the board issued one claim construction at an institution, but then changed that construction in its final written decision. Now, in that same opinion, this court considered a separate construction and affirmed it where the board had considered two dictionary definitions, one of which was in the record, one of which was not. So in a case where the APA issues were front and center, this court decided that the fact that one construction was not of the record was not of such a concern that due process considerations were called into question. With that, Your Honor, I think I'll reserve the remainder of my time for rebuttal. If there was anything to rebut. Correct, Your Honor. Mr. Bradford, we'll give you two minutes of rebuttal time. Thank you, Your Honor. At the start of Appelli's argument, there was a reference to the fact that light could be turned off in a variety of forms, and I think this is an important thing, too. This is at column one, line 63. The line actually states, emitting light of the present invention can be in a variety of forms. It's particularly shown as a lighting dynamic phenomenon in which a lighting section goes after another lighting section next to it in sequence. That section by section is referenced throughout the patent, but starts in the abstract. When the main cord is live, the drivers work synchronously and each electroluminescent cord emits and dies light periodically under the control of the chip. As each electroluminescent wire cord is intertwisted helically and people can only see one side of the cable, said whole cable is shown as a lighting phenomenon in which lighting section or lighting dot of said cable goes after section. The patent owner very clearly connected the section by an electrical sequencing that is claimed. The construction entered by the board of continuous or connected series simply doesn't make sense in the context of the claims. The claims, claim one, the actual claim term appears at the very end, the limitation that we're talking about, and it says every EL cord is driven by the driver and emits light in sequence. What that requires, what the construction is designed to establish is that each EL cord emits and dies light. Not that the entire cable is always continuously emitting light from a variety of cables. The limitation is specifically directed towards each filament, not all filaments. Continuous and a connected series makes no sense when it ties back to one filament, which the patent he said he did not want lit. Thank you, Your Honor. Thank you, Mr. Bradford, and there is no cross appeal to be rebutted. There is a cross appeal, but no rebuttal time. There is. We'll take the case on revise. Thank you, Your Honor.